495 S.E.2d 433

**Noah ROBINSON, Respondent,**

**v.**

**STATE of South Carolina, Petitioner,**

**No. 24741.**

Supreme Court of South Carolina.

Submitted Sept. 18, 1997.
Decided Jan. 12, 1998.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Teresa A. Knox, and Assistant Attorney General Matthew M. McGuire, Columbia, for Appellant.

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, Columbia; and John M. Rollins, Jr., Greer, for Respondent.

TOAL, Justice:

The Post Conviction Relief ("PCR") court granted Respondent Noah Robinson credit for time served while in federal prison; this credit was calculated from the date of the affirmance of Robinson's state court conviction. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In 1988, Robinson was indicted for murder, criminal conspiracy to commit murder, and accessory before the fact of assault and battery with intent to kill. In January 1989, Robinson was tried on these charges and found guilty of accessory after the fact of a felony. The trial court declared a mistrial on Robinson's other charges because of the failure of the jury to return a verdict. Robinson was sentenced to ten years confinement.

Robinson filed a notice of intent to appeal and posted an appeal bond. While out on appeal bond, he returned to Chicago. Later in 1989, Robinson was charged in federal court with violations of the Racketeer Influenced and Corrupt Organizations ("RICO") laws. He was subsequently convicted and sentenced to six years in prison. In August 1992, Robinson was convicted and sentenced to life imprisonment on additional criminal charges relating to his involvement with the Chicago-based El Rukn street gang. The federal sen-

tences were to run concurrently with Robinson's state sentence. We affirmed Robinson's state conviction in September 1991, which was during the interim between his federal court convictions. *State v. Robinson,* 305 S.C. 469, 409 S.E.2d 404 (1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992).

In November 1992, Robinson filed a PCR application in which he sought to obtain credit in South Carolina for time served in federal custody from the date we affirmed his conviction. Robinson had been exclusively in federal custody from the date of his arrest in 1989 for RICO violations until January 18, 1995, when he was admitted to, but deemed absent with leave from, the South Carolina Department of Corrections ("SCDOC"). After an evidentiary hearing, the PCR court issued an order of dismissal denying all of Robinson's claims. Robinson filed a Rule 59(e) Motion to Reconsider the Order of Dismissal. After another hearing,[1] the court amended its order of dismissal, affirming the prior order, but modifying it to the extent of granting Robinson credit for time served from the date we affirmed Robinson's state court conviction.

The State petitioned for a writ of certiorari, which we granted to review whether Robinson "commenced" the service of his South Carolina sentence when his conviction was affirmed.

### LAW/ANALYSIS

■ The credit for time served statute provides in pertinent part:

The computation of the time served by prisoners under sentences imposed by the courts of this State shall be reckoned from the date of the imposition of the sentence. But when (a) *a prisoner shall have given notice of intention to appeal,* (b) the commencement of the service of the sentence follows the revocation of probation or (c) the court shall have designated a specific time for the commencement of the service of the sentence, *the computation of the time*

---

1. At the time of the hearing, Robinson was incarcerated in the Oxford Federal Correctional Institution, Oxford, Wisconsin.

> *served shall be reckoned from the date of the commencement of the service of the sentence.*

S.C.Code Ann. § 24–13–40 (1989) (emphasis added). Here, we must determine when Robinson commenced the service of his sentence. The State argues that the PCR court erred by finding that Robinson commenced his sentence on the date his conviction was affirmed. We agree. We hold that for purposes of calculating credit for time served, persons released on appeal bond commence service of their sentences when they submit to the custody of the SCDOC, and not upon affirmance of their convictions.

In *Maxey v. Manning*, 224 S.C. 320, 78 S.E.2d 633 (1953), the habeas corpus petitioner was convicted of burglary and assault and battery with intent to kill. The petitioner was freed on appeal bond pending disposition of his appeal by this Court. His convictions were affirmed on October 30, 1950, and he was committed to the state penitentiary on November 15, 1950. In interpreting the applicable statute,[2] we noted that "service of the sentences, which was stayed by the appeal ..., is reckoned from the date of the commencement of the service of the sentences, which in this case was November 15, 1950." *Maxey*, 224 S.C. at 330, 78 S.E.2d at 637. Therefore, Maxey did not begin service of his sentence until sixteen days after his conviction was affirmed—until he submitted to the custody of the state penitentiary. There is no reason to interpret the statute differently when the defendant seeks credit on his South Carolina sentence for time served in the custody of another sovereignty.[3]

The law governing the imposition of concurrent sentences requires elaboration inasmuch as it is critical to the determination of when Robinson "commenced" the service of his sentence. South Carolina is "without authority to modify or

---

**2.** The statutory language at issue is the same as under the current statute. *See* 1952 S.C.Code of Laws § 55–11.

**3.** This case should be distinguished from those involving defendants arrested in another state and awaiting extradition and trial in South Carolina. Under S.C.Code Ann. § 24–13–40, these defendants receive credit for this time served prior to trial and sentencing, even though it is spent in another jurisdiction. *See State v. Dozier*, 263 S.C. 267, 210 S.E.2d 225 (1974).

place conditions on a sentence from a foreign jurisdiction." *Clark v. State*, 321 S.C. 377, 380, 468 S.E.2d 653, 655 (1996). Correspondingly, a foreign jurisdiction is without authority to modify or place conditions on a sentence imposed in South Carolina. Therefore, if a second jurisdiction imposes on a convict a sentence to run concurrently with the previously imposed sentence from another jurisdiction, it is the responsibility of the second jurisdiction to effectuate its concurrent sentence and thus ensure the convict receives credit for time served in both jurisdictions.[4] To achieve this result, the second jurisdiction must transfer custody of the convict to the first jurisdiction.

In *Clark v. State*, 321 S.C. 377, 468 S.E.2d 653, South Carolina failed to transport Clark to federal custody to effectuate South Carolina's imposition of a concurrent sentence. Clark pled guilty in federal court to possession of a sawed off shotgun. The judge sentenced him to ten years confinement. Subsequently, Clark pled guilty to several offenses in state court. Pursuant to a plea agreement, the judge ordered that the sentences run concurrently with Clark's previously imposed federal sentence. However, instead of being transported to federal custody, Clark remained in state prison. Clark then filed a PCR petition claiming that his plea bargain was not being enforced. We noted that "[t]he sentence of a person convicted of a federal offense commences to run from the date on which such person is received at the penitentiary." *Clark*, 321 S.C. at 379, 468 S.E.2d at 655; *see* 18 U.S.C. § 3585(a) (1994) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody . . . ."). As a result, we concluded that "the only way to effectuate a state trial court's order that a state sentence run concurrently with a prior federal sentence is to have the defendant returned to

---

4. In *Cobb v. State*, 286 S.C. 92, 332 S.E.2d 530 (1985), Cobb was sentenced in North Carolina for assault. He subsequently pled guilty in South Carolina to rape. The South Carolina trial court sentenced him to 30 years in prison to be served concurrently with his North Carolina sentence. On appeal, we held that "a South Carolina judge has authority to impose a sentence to run concurrently with a sentence already being served in another state." *Cobb*, 286 S.C. at 94, 332 S.E.2d at 531.

federal custody to serve his federal sentence." *Clark,* 321 S.C. at 380, 468 S.E.2d at 655. Because Clark had not been transferred to federal custody, he failed to receive credit against his federal sentence for the time he served in South Carolina custody.

In *State v. Furman,* 288 S.C. 243, 341 S.E.2d 795 (1986), the Georgia court neither transported Furman to South Carolina nor specified that its sentence was to be concurrent with the previously imposed South Carolina sentence. Furman was convicted in South Carolina for voluntary manslaughter and sentenced to twelve years imprisonment. Pending the disposition of his appeal, he was released. While out on appeal bond, Furman was arrested and convicted in Georgia for murder. He served his sentence in Georgia and was then returned to South Carolina. He filed a PCR application to receive credit against his South Carolina sentence for the time he spent in a Georgia prison. We held that "[i]n cases where sentences are imposed by two different sovereignties, the sentence will run concurrently only if so specified." *Id.* at 245, 341 S.E.2d at 796. Because the Georgia court failed to specify whether the sentences were to run concurrently, we concluded that Furman had to serve his South Carolina sentence without any credit for serving his Georgia sentence. *Furman* should not be read to imply that a convict will automatically receive credit for time served if a concurrent sentence is specified, even though custody of the convict has not been transferred to the first jurisdiction. *Furman* is overruled to the extent it suggests that only an order specifying concurrence is required for the convict to receive a concurrent sentence.

■ In the present case, the federal district court specifically stated that the federal sentences were to be served concurrently with the state sentence. Because the federal district court did so specify, Robinson now claims that he is entitled to credit for the time served in federal custody from the date his conviction was affirmed. We disagree. Although the federal district court had the authority to impose a sentence concurrent with Robinson's prior South Carolina sentence, 18 U.S.C. § 3584(a) (1994), the federal court could not

modify or place conditions on the previously imposed South Carolina sentence. Instead, the Bureau of Prisons should have delivered Robinson into South Carolina custody so that the federal court's imposition of a concurrent sentence could be satisfied.[5] *See* 18 U.S.C. § 3621(b) (1994) (Bureau of Prisons has statutory authority to designate a state correctional facility as the convict's place of imprisonment). Had Robinson been transferred to South Carolina custody, he would have begun the service of his state court sentence.

A convict may also receive credit for time served in another jurisdiction by notifying the SCDOC that he is unable to personally submit to South Carolina custody to commence the service of his sentence. Upon such notification, the SCDOC will place a detainer on the convict. *See Clark*, 321 S.C. at 380 n. 3, 468 S.E.2d at 655 n. 3. While the convict is subject to a South Carolina detainer, he is constructively in South Carolina custody. As a result, a convict will receive credit for time spent in another jurisdiction while subject to a South Carolina detainer. Because Robinson failed to immediately notify the SCDOC of his arrest and so submit himself to South Carolina custody, he cannot receive credit for all his time served in federal custody. Instead, he can only receive credit for the time he has served in federal custody since he submitted to South Carolina custody on January 18, 1995, the date he was admitted to, but deemed absent with leave from, the SCDOC.

## CONCLUSION

For the foregoing reasons, the PCR court's order is **RE-VERSED**.

FINNEY, C.J., WALLER and BURNETT, JJ., concur.

---

5. *See, e.g., United States v. Williams*, 65 F.3d 301 (2d Cir.1995) (A sentencing court has no authority to order that a convicted defendant be confined in a particular facility because those decisions are within the sole discretion of the Bureau of Prisons.).