## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Michael Braxton, #119081, Appellant,

v.

South Carolina Department of Corrections, Respondent.

Appellate Case No. 2017-001964

———————

Appeal From The Administrative Law Court
The Honorable Harold W. Funderburk, Jr.,
Administrative Law Judge

———————

Opinion No. 5737
Submitted December 2, 2019 – Filed July 1, 2020

———————

**AFFIRMED IN PART AND REVERSED AND
REMANDED IN PART**

———————

Michael Braxton, pro se.

Christina Catoe Bigelow, Salley W. Elliott, and Annie
Laurie Rumler, all of the South Carolina Department of
Corrections, of Columbia, for Respondent.

———————

**WILLIAMS, J.:**  Michael Todd Braxton appeals the order of the administrative
law court (ALC) affirming the South Carolina Department of Corrections's
(SCDC) final decision regarding his sentence.  On appeal, Braxton argues the ALC
erred in affirming SCDC's calculation of his sentence because SCDC did not award
him credit for time served while he was (1) on parole, (2) incarcerated in
Tennessee, and (3) awaiting extradition to South Carolina.  We affirm in part and

reverse and remand in part.

**FACTS/PROCEDURAL HISTORY**

On November 17, 1983, Braxton was sentenced to thirty years' incarceration after pleading guilty to first degree criminal sexual conduct (CSC).  Braxton served ten years and four months of his sentence, and on March 31, 1994, he was conditionally released to the state of Tennessee on parole.  On April 16, 1996, while on parole in Tennessee, Braxton was arrested for two counts of aggravated rape.  On May 28, 1996, while he was in custody for those arrests, South Carolina issued a parole violation warrant, and a parole violation hold was placed on Braxton.  Braxton was held in pretrial detention until he was sentenced to twenty-three years' imprisonment in the custody of the Tennessee Department of Corrections (TDOC),[1] and he was transferred to TDOC on June 1, 1998.  On June 8, 1998, South Carolina issued a second parole violation warrant on Braxton.  Braxton completed his sentence in Tennessee on November 2, 2015.  Thus, from the time of his arrest in 1996 until he finished serving his sentence in 2015, Braxton served approximately nineteen years and five months in Tennessee.  Following his release, beginning November 8, 2015, Braxton was incarcerated in Anderson County, South Carolina.[2]  Following an appearance before the Full Board of the South Carolina Board of Pardons and Parole on January 20, 2016, Braxton was transferred back into the custody of SCDC with a release date of June 22, 2022.

Braxton timely filed a Step 1 grievance with SCDC, claiming SCDC failed to give him credit towards his remaining CSC sentence for the time he spent on successful parole supervision and for the time he spent incarcerated in Tennessee.  Braxton's Step 1 grievance was denied.  Braxton then filed a Step 2 grievance with SCDC, restating the allegations set forth in his Step 1 grievance and also arguing he should be credited for time served "incarcerated in Tennessee . . . (which includes the time served during the extradition process)."  His Step 2 grievance was subsequently denied.

Braxton then appealed SCDC's denial of his grievances to the ALC.  He argued SCDC erred in refusing to give him credit (1) for the time he spent on parole, (2)

---

[1] Braxton was sentenced on May 1, 1998.

[2] It is not clear from our review of the record where Braxton was housed between the completion of his sentence in Tennessee on November 2, 2015, and his transfer to Anderson County.

for the time he spent in pretrial detention and incarcerated for unrelated charges in Tennessee while there were parole violation warrants from South Carolina in place, and (3) for the time he served for the period he was held in Anderson County before returning to the custody of SCDC. By order dated August 24, 2017, the ALC affirmed SCDC's final decision regarding the calculation of Braxton's sentence. This appeal followed.

## ISSUE ON APPEAL

Did the ALC err in affirming SCDC's final decision regarding the calculation of Braxton's sentence as to the time he served while he was (1) on parole, (2) incarcerated in Tennessee, and (3) awaiting extradition to South Carolina?

## STANDARD OF REVIEW

"In an appeal of the final decision of an administrative agency, the standard of appellate review is whether the AL[C]'s findings are supported by substantial evidence." *Sanders v. S.C. Dep't of Corr.*, 379 S.C. 411, 417, 665 S.E.2d 231, 234 (Ct. App. 2008). "Although [the appellate] court shall not substitute its judgment for that of the AL[C] as to findings of fact, [it] may reverse or modify decisions which are controlled by error of law or are clearly erroneous in view of the substantial evidence on the record as a whole." *Id*. "In determining whether the AL[C]'s decision was supported by substantial evidence, [the appellate] court need only find, considering the record as a whole, evidence from which reasonable minds could reach the same conclusion that the AL[C] reached." *Id*. This court's review of the ALC's order must be confined to the record provided on appeal. S.C. Code Ann. § 1-23-610(B) (Supp. 2019). "Furthermore, the burden is on appellants to prove convincingly that the agency's decision is unsupported by the evidence." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 226, 467 S.E.2d 913, 917 (1996).

## LAW/ANALYSIS

Section 24-13-40 of the South Carolina Code (Supp. 2019) provides the following regarding the computation of time served:

> The computation of the time served by prisoners under sentences imposed by the courts of this State must be calculated from the date of the imposition of the sentence. However, when (a) a prisoner shall have given

notice of intention to appeal, (b) the commencement of the service of the sentence follows the revocation of probation, or (c) the court shall have designated a specific time for the commencement of the service of the sentence, the computation of the time served must be calculated from the date of the commencement of the service of the sentence. In every case in computing the time served by a prisoner, *full credit against the sentence must be given for time served prior to trial and sentencing*, and may be given for any time spent under monitored house arrest. Provided, however, that credit for time served prior to trial and sentencing shall not be given: (1) when the prisoner at the time he was imprisoned prior to trial was an escapee from another penal institution; or (2) when the prisoner is serving a sentence for one offense and is awaiting trial and sentence for a second offense in which case he shall not receive credit for time served prior to trial in a reduction of his sentence for the second offense.

(emphasis added).

## I.   Time Spent on Parole

Braxton argues the ALC erred in affirming SCDC's refusal to grant him credit for time served while he was successfully on parole prior to his Tennessee arrest. We agree.

As an initial matter, we agree with the ALC that section 24-13-40 does not apply to time spent on parole. Based on a plain reading of the statutory language, we find section 24-13-40 applies to credit for time served while incarcerated *prior to trial or sentencing*, and it does not address whether credit should be granted for time spent on parole *after sentencing*. *See Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 608, 670 S.E.2d 674, 678 (Ct. App. 2008) ("Words in the statute should be given their plain and ordinary meaning without resulting to forced or subtle construction."). However, although section 24-13-40 does not address credit for time served while on parole, our supreme court addressed the status of a parolee in *Sanders v. MacDougall*, stating, "A prisoner upon release on parole *continues to serve his sentence* outside the prison walls. The word parole is used in contra-distinction to suspended sentence and means a

leave of absence from prison during which the prisoner *remains in legal custody* until the expiration of his sentence." 244 S.C. 160, 163, 135 S.E.2d 836, 837 (1964) (emphases added). The court further provided, "An order revoking parole simply restores a defendant to the status he would have occupied had this form of leniency never been extended to him." *Id.* at 164, 135 S.E.2d at 837.

Following his CSC conviction and imprisonment in South Carolina, Braxton was successfully paroled from March 31, 1994, until he was arrested in Tennessee on April 16, 1996. Because Braxton continued to serve his sentence outside the prison walls and remained in legal custody while he was on parole, we find he should receive credit towards the remainder of his CSC sentence for the time he was on parole. *See id.* at 163, 135 S.E.2d at 837 (providing that a prisoner on parole remains in the legal custody of the South Carolina Probation, Parole, and Pardon Services (DPPP) Board and continues to serve his sentence outside the prison walls). Accordingly, we reverse and remand this issue to the ALC to recalculate Braxton's sentence such that he receives credit for the time he served while on parole.[3]

## II.   Time Spent Incarcerated in Tennessee

Braxton argues the ALC erred in refusing to award him credit for time served before and after he was sentenced on charges in Tennessee because he was in the constructive custody of South Carolina during those periods as a result of the issued parole violation warrants. We disagree.

Initially, we note we disagree with the ALC's reliance on section 24-13-40 to affirm SCDC's refusal to award Braxton credit for the time he was imprisoned in Tennessee because that section applies to credit for time served prior to trial and sentencing and Braxton was imprisoned in Tennessee after his trial and sentencing for his conviction in South Carolina. *See* § 24-13-40 (providing for the computation of time served by prisoners so that full credit against the sentence is given *for time served prior to trial and sentencing*); *see also Blue Ribbon Taxi*, 380

---

[3] On appeal, Braxton also argues the DPPP policies and SCDC policies mandate that he be given credit for the time he spent on parole. However, we decline to address this argument as our holding is dispositive of this claim. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address remaining issues on appeal when resolution of a prior issue is dispositive).

S.C. at 608, 670 S.E.2d at 678 ("Words in the statute should be given their plain and ordinary meaning without resulting to forced or subtle construction.").

Nevertheless, we agree with the ALC that Braxton is not entitled to credit for the time he served following his arrest and conviction in Tennessee. "[A] foreign jurisdiction is without authority to modify or place conditions on a sentence imposed in South Carolina." *Robinson v. State*, 329 S.C. 65, 69, 495 S.E.2d 433, 435 (1998). "Therefore, if a second jurisdiction imposes on a [prisoner] a sentence to run concurrently with the previously imposed sentence from another jurisdiction, it is the responsibility of the second jurisdiction to effectuate its concurrent sentence and thus ensure the [prisoner] receives credit for time served in both jurisdictions." *Id*. "To achieve this result, the second jurisdiction must transfer custody of the [prisoner] to the first jurisdiction." *Id*. "A [prisoner] may also receive credit for time served in another jurisdiction by notifying [SCDC] that he is unable to personally submit to South Carolina custody to commence the service of his sentence." *Id*. at 71, 495 S.E.2d at 436. "Upon such notification, [SCDC] will place a detainer on the [prisoner]." *Id*. "While the [prisoner] is subject to a South Carolina detainer, he is constructively in South Carolina custody." *Id*. at 71, 495 S.E.2d 436–37. "As a result, a [prisoner] will receive credit for time spent in another jurisdiction while subject to a South Carolina detainer." *Id*. at 71, 495 S.E.2d at 437.

In *Robinson*, the prisoner was lawfully released on an appeal bond for a South Carolina conviction. 329 S.C. at 66, 495 S.E.2d at 434. While out on bond, he was convicted and concurrently sentenced for several unrelated federal charges in Illinois. *Id*. at 66–67, 495 S.E.2d at 434. The prisoner's South Carolina conviction was affirmed, and because the federal court imposed a sentence to run concurrently with his South Carolina sentence, he sought to obtain credit in South Carolina for the time he served in federal custody. *Id*. at 67, 70, 495 S.E.2d at 434, 436. Our supreme court found the federal court could not modify or place conditions on his previously imposed South Carolina sentence and indicated it should have delivered the prisoner into South Carolina custody for the concurrent sentence to be satisfied. *Id*. at 70–71, 495 S.E.2d at 436. In the instant case, there is no indication in the record that Braxton's Tennessee sentence was set to run concurrently with his South Carolina sentence, and Braxton was not transferred back to South Carolina in order to ensure he received credit for time served in both Tennessee and South Carolina. *See Robinson*, 329 S.C. at 69, 495 S.E.2d at 435 ("[A] foreign jurisdiction is without authority to modify or place conditions on a sentence imposed in South Carolina."); *id*. ("Therefore, if a second jurisdiction imposes on a [prisoner] a sentence to run concurrently with the previously imposed sentence

from another jurisdiction, it is the responsibility of the second jurisdiction to effectuate its concurrent sentence and thus ensure the [prisoner] receives credit for time served in both jurisdictions.").

Although *Robinson* additionally held that credit for time served may be received for time served in another jurisdiction while a prisoner is subject to a South Carolina detainer, we find *Robinson* distinguishable from Braxton's case even though Braxton was under a South Carolina parole violation warrant. *See id*. at 71, 495 S.E.2d at 436–37. Unlike in Braxton's case, the federal court in *Robinson* intentionally imposed a sentence that was to run concurrently with Robinson's South Carolina sentence. *Id*. at 66–67, 495 S.E.2d at 434. Further, in *Delahoussaye v. State*, our supreme court declined to use *Robinson* to credit a prisoner for time served in another jurisdiction while subject to a South Carolina detainer when the prisoner was an escapee from a South Carolina institution. 369 S.C. 522, 526–28, 633 S.E.2d 158, 160–62. Because a prisoner released on parole has an uncontested conviction, remains in legal custody, and continues to serve his sentence while outside the prison walls, we find a violation of parole places Braxton in a status more akin to an escapee, as in *Delahoussaye*, than a prisoner lawfully released on an appeal bond, as in *Robinson*. Moreover, the court in *Delahoussaye* also highlighted the fact that the prisoner could "not assert that his federal sentence was intended to run concurrently with his South Carolina sentence." *Id*. at 528, 633 S.E.2d at 161–62. Thus, we find it is also relevant for this determination that there is no indication in the record that Braxton's Tennessee sentence was intended to run concurrently with his South Carolina sentence.

Based on the foregoing, we find Braxton is not entitled to credit for time served in Tennessee even though he was under a South Carolina parole violation warrant.[4]

---

[4] Braxton also argues his due process rights were violated because he did not receive a probable cause or revocation hearing while incarcerated in Tennessee. Based upon our review of the record, we find this issue is not preserved for our review as it was neither raised to nor ruled upon by the ALC. *See Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 519, 560 S.E.2d 410, 417 (2002) ("[I]ssues not raised to and ruled on by the AL[C] are not preserved for appellate consideration."); *Al-Shabazz v. State*, 338 S.C. 354, 379, 527 S.E.2d 742, 755 (2000) ("[The record] must include all that is necessary to enable the [appellate] court to decide whether the AL[C] made an erroneous or unsubstantiated ruling."); *see also* § 1-23-610(B) ("The review of the [ALC's] order must be confined to the record.").

### III.   Time Spent Awaiting Extradition to South Carolina

Braxton argues the ALC erred in finding unpreserved his argument that SCDC erred in refusing to give him credit for the time period he was held in Anderson County.  We disagree.

Braxton argued in his Step 2 grievance that he should receive credit for the time he was incarcerated *in Tennessee*, and, in parenthesis, noted "this includes time served during the extradition process."  We agree with the ALC that this language did not specifically bring the issue of the time Braxton was held in Anderson County, South Carolina before the ALC.  *See Kiawah Resort Assocs. v. S.C. Tax Comm'n*, 318 S.C. 502, 505, 458 S.E.2d 542, 544 (1995) (providing that the appellate court will not consider issues that were not raised to and ruled upon by the administrative agency).  Furthermore, we find Braxton failed to produce a sufficient record for this court to review this issue as Braxton did not include his final brief to the ALC in the record.  *See Al-Shabazz*, 338 S.C. at 379, 527 S.E.2d at 755 ("[The record] must include all that is necessary to enable the [appellate] court to decide whether the AL[C] made an erroneous or unsubstantiated ruling."); *see also* § 1-23-610(B) ("The review of the [ALC's] order must be confined to the record.").  Thus, we affirm as to this issue.

### CONCLUSION

Based on the foregoing, the ALC's order is

**AFFIRMED in part and REVERSED and REMANDED in part.**[5]

**HUFF and MCDONALD, JJ., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.