633 S.E.2d 158

**Ralph DELAHOUSSAYE, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

No. 26184.

Supreme Court of South Carolina.

Submitted May 24, 2006.

Decided July 17, 2006.

Rehearing Denied Aug. 11, 2006.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, of Columbia, for Petitioner.

Assistant Appellate Defender Eleanor Duffy Cleary, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Respondent.

Justice WALLER:

This Court granted the State's petition for a writ of certiorari to review the grant of post-conviction relief (PCR) to respondent Ralph Delahoussaye. We affirm in part, and reverse in part.

## FACTS

On March 9, 1976, a jury convicted respondent of armed robbery, and the trial court sentenced him to 25 years imprisonment. This Court affirmed respondent's conviction on November 12, 1976. *State v. Delahoussaye,* Op. No. 76–MO–106 (S.C. Sup.Ct. filed Nov. 12, 1976). Four days later, on November 16, 1976, respondent escaped from the custody of the South Carolina Department of Corrections (SCDOC).

While an escapee, respondent committed the federal crimes of conspiracy to kidnap, conspiracy to transport a stolen motor

vehicle interstate, and possession of a firearm during the commission of a felony. He was sentenced to 45 years in federal district court in Georgia on February 4, 1977. At the sentencing, the trial court stated:

Now you all[1] have difficulties with the State of South Carolina as to the charges you were serving and have not yet completed. There are other charges pending against you that have not yet been resolved. The sentence that this Court imposes upon each of you today is separate and distinct of all other sentences that have been imposed or that may be imposed by any other court, Federal or State. I say that so there won't be any misunderstanding about that.

The SCDOC issued a detainer against respondent on August 7, 1979.[2] After being paroled from federal prison, respondent returned to the SCDOC's custody on February 2, 2002. The SCDOC calculated his projected max-out date for the 25–year armed robbery sentence as August 9, 2015.

In June 2002, respondent filed for PCR seeking credit for the time he served while in federal custody. After a hearing, the PCR court rejected the State's argument that, pursuant to *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), this is an administrative matter not properly heard in PCR court. In addition, the PCR court granted respondent relief and ordered that respondent's sentence "be recalculated so that he is given credit for time spent in federal custody since August 7, 1979."

## ISSUES

1. Did the PCR court err in finding that respondent's claim, involving credit for time served in another jurisdiction, was appropriate for PCR?

---

**1.** Respondent had a co-defendant in federal court.

**2.** The August 7, 1979, letter indicated respondent was "wanted to complete the remainder of the 25–year sentence from which he escaped on November 16, 1976," in addition to being wanted for other outstanding charges related to his escape. Eventually, the detainer that was specifically related to the unresolved charges was considered "void" for lack of prosecution, but a "hold" was continued due to respondent's 25–year sentence for the armed robbery conviction.

2. Did the PCR court err in finding that respondent's time served in federal custody, for crimes committed after his escape from South Carolina's custody, entitled him to credit on his original South Carolina armed robbery sentence?

## DISCUSSION

### 1. Propriety of Claim under PCR Act

■  The State argues that the PCR court erred in allowing respondent's claim to be asserted under the PCR Act because it involves service credit which, pursuant to *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), is the type of claim that should be reviewed under the Administrative Procedures Act (APA).

In *Al–Shabazz*, this Court held that under the PCR statute, PCR is proper only when the applicant mounts a collateral attack challenging the validity of his conviction or sentence. *Al–Shabazz*, 338 S.C. at 367, 527 S.E.2d at 749 (citing S.C.Code Ann. § 17–27–20(a)). Nonetheless, the Al–Shabazz Court noted "two non-collateral matters specifically listed in Section 17–27–20(a)(5)" that are cognizable under the PCR Act: "the claim that an applicant's sentence has expired and the claim that an applicant's probation, parole, or conditional release has been unlawfully revoked."[3]  Id. at 368, 527 S.E.2d at 749.

As for the majority of non-collateral matters, however, *Al–Shabazz* stated that these claims generally would be decided first by the SCDOC's internal grievance system and then would be subject to review under the APA. *Id.* at 369, 527 S.E.2d at 750. Specifically, the Court noted that "[t]hese administrative matters typically arise in two ways: (1) when an inmate is disciplined and punishment is imposed and (2) when an inmate believes prison officials have erroneously

---

3.  Section 17–27–20 lists who may institute a PCR action and specifically states that "[a]ny person who has been convicted of, or sentenced for, a crime and who claims:  ... (5) **That his sentence has expired,** his probation, parole or conditional release unlawfully revoked, **or he is otherwise unlawfully held in custody** or other restraint" may bring a claim under the PCR Act. S.C.Code Ann. § 17–27–20(a)(5) (2003) (emphasis added).

calculated his sentence, sentence-related credits, or custody status." *Id.*

The PCR court found that the instant case was distinguishable from *Al–Shabazz,* which concerned **discretionary** good-time credits, because this case involved "day-for-day time actually served" by the inmate. In addition, the PCR court found that where a case involves the expiration of a sentence, *Al–Shabazz* specifically allowed this type of claim under the PCR Act.

We agree with the PCR court that respondent's case encompasses a claim that his sentence had expired.[4] Therefore, this matter was appropriately filed pursuant to the PCR statute. *See* S.C.Code Ann. § 17–27–20(a)(5); *Al–Shabazz,* 338 S.C. at 368, 527 S.E.2d at 749.

Accordingly, we affirm the PCR court's ruling on this issue.

### 2. Credit For Federal Time Served After An E s cape

■ The State also argues that when an inmate escapes from the SCDOC's custody, subsequently commits a crime in another jurisdiction while an escapee, and serves time for the subsequent crime, the inmate should not be entitled to credit for the time served simply because the SCDOC has issued a detainer. The PCR court, however, found that this Court's decision in *Robinson v. State,* 329 S.C. 65, 495 S.E.2d 433 (1998), clearly stated that a South Carolina convict may receive credit for the time that he is incarcerated in another jurisdiction from the time that a detainer is issued by the SCDOC. We agree with the State that because *Robinson* did not involve an escapee, it is inapplicable to the instant case.

In *Robinson v. State,* Robinson had been found guilty of accessory after the fact of a felony in South Carolina state court in 1989; he was sentenced to ten years imprisonment. He appealed his conviction **and was released on appeal bond.** Later in 1989, he was arrested in Chicago on federal RICO

---

4. We note the SCDOC **released** respondent from its custody after the PCR court granted him relief (but prior to the State filing its appeal). Thus, **under these particular facts,** it is clear to us respondent's claim regarding credit for approximately 23 years of federal time actually served indeed was a claim that his 25–year South Carolina sentence had expired.

charges. He was subsequently convicted and sentenced to six years in prison. Then, in August 1992, he was convicted and sentenced to life imprisonment on additional, gang-related federal charges. The federal sentences were ordered to run concurrently with Robinson's state sentence. 329 S.C. at 66–67, 495 S.E.2d at 434. Robinson's state conviction was affirmed by this Court in September 1991 (which was in between his federal court convictions). *See State v. Robinson,* 305 S.C. 469, 409 S.E.2d 404 (1991), *cert. denied,* 503 U.S. 937, 112 S.Ct. 1477, 117 L.Ed.2d 620 (1992).

Robinson filed for PCR seeking to obtain credit in South Carolina for time served in federal custody from the date his conviction was affirmed. Robinson had been in federal custody from the date of his 1989 arrest until January 18, 1995, when he was admitted to, but deemed absent with leave from, the SCDOC. The PCR court granted Robinson credit for time served from the date his South Carolina conviction was affirmed. *Robinson v. State,* 329 S.C. at 67, 495 S.E.2d at 434.

This Court reversed explaining that because the federal sentences had been ordered to run concurrent with the South Carolina sentence, "the Bureau of Prisons should have delivered Robinson into South Carolina custody so that the federal court's imposition of a concurrent sentence could be satisfied." *Id.* at 71, 495 S.E.2d at 436. However, the Court also stated that while a "convict is subject to a South Carolina detainer, he is constructively in South Carolina custody. As a result, a convict will receive credit for time spent in another jurisdiction while subject to a South Carolina detainer." *Id.* at 71, 495 S.E.2d 433, 495 S.E.2d at 436–37. Therefore, the Court held that he should have been given credit for time served since January 18, 1995 (the date he was constructively admitted to the SCDOC). *Id.* at 71, 495 S.E.2d at 437.

Respondent argues the rule of *Robinson* applies to his case despite the fact that he escaped from state custody. Specifically, respondent maintains that the lodging of a detainer significantly harms a federal inmate's status, and these consequences occur "regardless of whether the person escaped." Thus, respondent contends that the PCR court correctly applied *Robinson.* We disagree. Because Robinson was **lawfully** out on appeal bond, he was entitled to the credit. Here,

however, respondent **escaped** from the SCDOC's custody. Under South Carolina law, it is clear respondent's status as an escapee distinguishes this case from the *Robinson* rule.

In *Oglesby v. Leeke*, 263 S.C. 283, 210 S.E.2d 232 (1974), we stated that "[a]s a general rule, a sentence can be satisfied only by death, service of the required time, or relief therefrom by competent authority." *Id.* at 287, 210 S.E.2d at 234. There, Oglesby had been sentenced to three years for housebreaking and larceny; he escaped approximately five months after his sentence began. Subsequently, he committed a crime in New York and served time there. While serving the New York sentence, a detainer was filed requesting a hold for South Carolina. Oglesby refused to waive extradition, but extradition was eventually granted, and he returned to prison in South Carolina to complete service of the three-year sentence. *Id.* at 285–86, 210 S.E.2d at 233.

This Court affirmed the trial court's denial of "credit for any of the time he was away during his escape." *Id.* at 286, 210 S.E.2d at 233. Significantly, we held that Oglesby's escape "tolled the running of the sentence he was then serving and the time of his imprisonment under that sentence did not again begin to run until his return to the South Carolina prison." *Id.* Moreover, we observed that Oglesby's:

> [E]ntire absence was because of his escape and his resistance to efforts of the State of South Carolina to effect his return for the service of his sentence. **It is undisputed that no part of his absence or imprisonment in New York was in execution of the South Carolina sentence.**

*Id.* at 286–87, 210 S.E.2d at 233–34 (emphasis added).

We hold that the rule of *Oglesby* was not modified by this Court's decision in *Robinson* and therefore directly applies to respondent's case. Here, as in *Oglesby*, respondent's entire absence from the SCDOC's custody was because of his escape. Furthermore, given the federal trial judge's comments regarding respondent's "difficulties with the State of South Carolina" and that the federal sentence was "separate and distinct of all other sentences that have been imposed or that may be imposed by any other court," respondent cannot assert that his federal sentence was intended to run concurrently with his South Carolina sentence.

Moreover, because we have previously distinguished a rule regarding service credit based on whether the inmate's status was non-escapee versus escapee, it is consistent with South Carolina case law that the *Robinson* rule should not be applied to an escapee. *Compare State v. Dozier,* 263 S.C. 267, 210 S.E.2d 225 (1974) (holding that where a non-escapee is imprisoned in another state while contesting extradition, he is entitled to credit on any subsequent South Carolina sentence) *with Kephart v. State,* 277 S.C. 395, 289 S.E.2d 402 (1982) (holding that escapee's time spent imprisoned in Pennsylvania contesting extradition should not be credited toward his remaining armed robbery sentence in South Carolina).[5]

Finally, we note that several other states have also ruled an escapee cannot be credited with time served in another jurisdiction on a subsequent crime. *See, e.g.; Woodson v. State,* 178 Ind.App. 692, 383 N.E.2d 1096 (1978); *Williams v. State,* 280 N.W.2d 406 (Iowa 1979); *State ex rel. Linehan v. Wood,* 397 N.W.2d 341 (Minn.1986); *Commonwealth ex rel. Goins v. Rundle,* 411 Pa. 590, 192 A.2d 720(Pa.), *cert. denied,* 375 U.S. 959, 84 S.Ct. 449, 11 L.Ed.2d 317 (1963); *Carter v. State,* 523 S.W.2d 639 (Tenn.Crim.App.1975).

Indeed, "[i]t would be a novel rule which would allow a sentenced criminal, by the simple expedient of escape, to select the state in which he wishes to serve his incarceration." *Williams,* 280 N.W.2d at 408; *see also Carter,* 523 S.W.2d at 640 ("Service of jail time in another jurisdiction during a fugitive status certainly does not double as service of the punishment escaped from.").

In sum, we find the PCR court erred by applying *Robinson* and ordering that respondent's sentence be recalculated by the SCDOC. Because respondent's escape "tolled the running of the sentence he was then serving," the SCDOC correctly calculated that his 25-year armed robbery sentence originally imposed in 1976 "did not again begin to run until his return to

---

**5.** The Legislature has also made distinctions regarding service credit based on an inmate's escapee status. *See* S.C.Code Ann. § 24–13–40 (1976) (statute for computation of time served by prisoners provides that full credit shall be given for time served prior to trial and sentencing, except that credit for time served shall **not** be given "when the prisoner at the time he was imprisoned prior to trial was an escapee from another penal institution").

the South Carolina prison" in 2002. *Oglesby,* 263 S.C. at 287, 210 S.E.2d at 234.

Accordingly, we reverse the PCR court's grant of relief to respondent. *See Pierce v. State,* 338 S.C. 139, 145, 526 S.E.2d 222, 225 (2000) (the Court will reverse if the PCR court's decision is controlled by an error of law).

## CONCLUSION

Based on the above reasons, the PCR court's finding that respondent properly pursued this action under the PCR Act is affirmed. However, we reverse the PCR court's ruling that respondent was entitled to credit on his South Carolina armed robbery sentence for federal time served after he escaped from the SCDOC's custody.

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.